1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAYMOND DE BOTTON,

               Plaintiff,

    v.

QUALITY LOAN SERVICES
CORPORATION OF WASHINGTON, *et al.*,

               Defendants.

CASE NO. 2:23-cv-00223-RSL

ORDER AWARDING ATTORNEY'S
FEES AND REFERRING MATTER
TO CHIEF JUDGE ESTUDILLO

      This matter comes before the Court on "Defendants' Motion for an Award of Fees,"
Dkt. # 53, and the Declaration of Scott E. Stafne, Dkt. # 55. Shortly after this lawsuit was
filed in the Snohomish County Superior Court, defendants Quality Loan Services
Corporation of Washington, McCarthy & Holthus LLP, and Warren Lance notified
plaintiff and his counsel that plaintiff's claims violated Federal Rule of Civil Procedure
11(b)(1) and (2) and gave them an opportunity to cure. Dkt. # 53-1 at 5-12. At
approximately the same time, defendants filed a motion for summary judgment specifically
identifying the defects they believed plagued plaintiff's various claims. The complaint was
neither withdrawn nor amended.

ORDER AWARDING ATTORNEY'S FEES AND
REFERRING MATTER TO CHIEF JUDGE ESTUDILLO - 1

In March 2023, Quality Loan Services, McCarthy & Holthus, and Lance filed an amended motion for summary judgment. Plaintiff responded with a Rule 56(d) request for an opportunity to conduct discovery. The request was granted, and consideration of the motion for summary judgment was continued for three months. Nevertheless, plaintiff did not file an opposition, and all claims against Quality Loan Services, McCarthy & Holthus, and Lance were dismissed with the exception of a takings claim that was not discussed in the motion. Defendants subsequently filed a dispositive motion directed at the takings claim. Plaintiff again failed to respond, and the motion was granted.

Defendants seek sanctions under Rule 11(c)(2), arguing that each and every one of plaintiff's claims were frivolous and that his challenges to the 2021 non-judicial foreclosure sale and subsequent surplus funds proceeding were asserted for improper purposes. The motion was noted for consideration on October 20, 2023. No response was filed before the note date. Two days after the motion was ripe, plaintiff's counsel submitted a declaration (1) indicating that plaintiff intends to petition the United States Supreme Court for a determination of whether the undersigned has the power to hear this dispute, (2) suggesting that it was improper for the undersigned to address the merits of plaintiff's claims before the judicial power issue was resolved, (3) requesting that the undersigned produce his 2020, 2021, and 2022 financial disclosure reports, and (4) asserting that the undersigned's state retirement accounts create a conflict of interest and require recusal.

Counsel's declaration opposing the motion for sanctions is untimely and is denied on that ground. Even if the statements and argument contained in the declaration are considered, they do not show that plaintiff's claims against Quality Loan Services, McCarthy & Holthus, and/or Lance had merit or were warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law as required by Rule 11(b). In fact, counsel's declaration suggests that he pursued this action not to regain the house or equity that his client lost, but as part of a quixotic effort to change Washington policy toward borrowers and, following removal, to disqualify senior district judges from hearing cases in which he is involved.

This case involves an individual homeowner, his promissory notes, the loss of his home through a non-judicial foreclosure, and the disbursement of surplus funds to lien holders. It was counsel's job to show that something went wrong during the foreclosure and/or disbursement process and that a judicial remedy is available. Instead, counsel summarizes the history of mortgage-backed securities and related record-keeping practices and provides his views regarding the wisdom of policy choices that allowed securitization and protected banks from the consequences of their actions. These high level arguments/assertions are largely untethered to the facts of this case and the claims alleged. Counsel offers no legal analysis in support of his assertion that the identification of MERS as the beneficiary of the deed of trust prohibits a non-judicial foreclosure. Washington case law is clear that the false designation of MERS as the beneficiary (i.e., the holder of the note) does not invalidate the deed of trust. See *Larson v. Snohomish Cnty.*, 20 Wn. App.2d

243, 276-78 (2021), *review denied*, 199 Wn.2d 1016 (2022), and *cert. denied sub nom.*

*Larson v. Snohomish Cnty., Washington*, __ U.S. __, 143 S. Ct. 575 (2023). Nor does

plaintiff provide evidence that his "wet ink" promissory notes were destroyed. The

undersigned has held that actual physical possession of the original signed promissory note

is required for a non-judicial foreclosure under the Deed of Trust Act, and a foreclosure

without possession of the note could give rise to a valid claim. *See McDonald v. OneWest*

*Bank, FSB*, 929 F. Supp.2d 1079, 1088 (W.D. Wash. 2013). Defendants, however,

submitted a declaration, signed under penalty of perjury, identifying the holder of the

promissory note. Dkt. # 7-3. Plaintiff offers nothing that contradicts that declaration: no

evidence that the original note was, in fact, destroyed, no evidence that the note holder has

refused or been unable to produce the original note upon request, and nothing that throws

doubt on the veracity of the beneficiary declaration. At the summary judgment stage,

plaintiff must do more than simply rely on the contested allegations of the complaint.

   The Court finds that sanctions against plaintiff's attorney and his law firm under

Rule 11(c) are appropriate. Despite his refusal to withdraw the challenged pleading,

counsel made no attempt to prove the various claims he asserted on behalf of his client. To

the extent counsel has attempted to justify these failures by raising challenges to the

tribunal, these challenges are, as discussed below, without merit and precluded by existing

law.

1

2

3

**(1) Senior Status Argument**

Counsel asserts that the senior district judge assigned to this case cannot validly

exercise federal judicial power because he is a retired judge who retains his judicial

position not under Article III, but rather through the annual certification process discussed

in 28 U.S.C. § 371(b)(1) and (e). The argument is without merit. The Supreme Court has

determined that senior judges "are, of course, life-tenured Article III judges who serve

during 'good Behaviour' for compensation that may not be diminished while in office."

*Nguyen v. United States*, 539 U.S. 69, 72 (2003). While the high court's analysis was brief,

the determination is sound. The undersigned (and all federal judges who adopt senior

status) went through the constitutionally-mandated nomination and confirmation process

and has not relinquished his position through resignation, impeachment, or death.

Although senior judges are not subject to the regular duty assignments that otherwise apply

in their districts, they nevertheless retain their office as long as they perform the quantum

of duties specified in Section 371(e). The fact that the chief judge of the Ninth Circuit must

certify that the Section 371(e) requirements have been met – a purely ministerial act – does

not change or invalidate a senior judge's retention of his office during good behaviour with

the right to undiminished compensation during his continuance in office, exactly as

contemplated by Article III.

This is not the first time counsel has raised an Article III objection to the

involvement of a senior judge in a case he filed on his own or another's behalf. The

argument has been squarely rejected every time, as have similar arguments raised by

others. *See Booth v. United States*, 291 U.S. 339, 351 (1934); *Bank of New York Mellon v. Stafne*, 824 F. App'x 536, 536 (9th Cir. 2020); *Steckel v. Lurie*, 185 F.2d 921, 924-25 (6ᵗʰ Cir. 1950); *Stafne v. Burnside*, C16-0753-JCC, 2022 WL 2073074 (W.D. Wash. June 9, 2022); *Hoang v. Bank of Am., N.A.*, No. C17-0874JLR, 2021 WL 615299, at *5 (W.D. Wash. Feb. 17, 2021). At this point, counsel's senior status argument cannot be justified by a reasonable hope that existing law will be extended, modified, reversed, or changed in his favor.

**(2) Merits Evaluation**

Plaintiff's counsel argues that the Court's consideration of defendants' dispositive motions was improper because it had not made an express finding that it had the power to hear this case. While an objection to the Court's subject matter jurisdiction cannot be waived and jurisdiction must be affirmatively shown, *see Stafne v. Zilly*, 337 F. Supp.3d 1079, 1085 (W.D. Wash. 2018), the Court is not obliged to issue a written order on every imaginable objection: the important thing is whether the Court does, in fact, have jurisdiction over this matter. It does.

Defendants' notice of removal clearly established the Court's federal question and supplemental jurisdiction over this matter. Plaintiff responded to the removal not with a motion to recuse or to otherwise disqualify the undersigned, but with a motion to remand. The senior status argument was entirely unpersuasive in that context because federal jurisdiction plainly existed and remand would have been inappropriate: if plaintiff were correct, the remedy would be a transfer to an active district judge, not remand. A brief

review of the case law described above revealed that plaintiff was not correct, however. Because federal jurisdiction clearly existed and there was no impediment to the undersigned's continued involvement in the case, the Court declined to address a frivolous argument that was irrelevant to the outcome of the then-pending motion.

Now, having failed to respond to defendants' dispositive motions and facing dismissal of the last of his claims, plaintiff's counsel expressly challenges the undersigned's power to exercise federal jurisdiction and also requests that the undersigned recuse himself on conflict of interest grounds. Those arguments are considered herein, but their belated assertion does not invalidate the Court's earlier decisions.

### (3) Financial Disclosure Reports

A federal judge's most recent financial disclosure reports can be obtained through an on-line database maintained by the Administrative Office of the United States Courts, and reports from 2017 to 2020 are available by request from that entity. *See* https://www.uscourts.gov/judges-judgeships/judiciary-financial-disclosure-reports#SnippetTab.

### (4) Recusal

Plaintiff asserts that the undersigned's retirement accounts from his years as a state prosecutor and judge create a conflict of interest that requires recusal. Due process entitles a person to a fair and impartial tribunal. *See Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 876 (2009). The statutes that govern judicial conduct are even more protective. Section 455 of title 28 states in relevant part: "Any justice, judge, or magistrate judge of

the United States shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned." Additionally, 28 U.S.C. § 144, pertaining to judicial bias or

prejudice, provides:

> Whenever a party to any proceeding in a district court makes and files a
> timely and sufficient affidavit that the judge before whom the matter is
> pending has a personal bias or prejudice either against him or in favor of any
> adverse party, such judge shall proceed no further therein, but another judge
> shall be assigned to hear such proceeding. The affidavit shall state the facts
> and the reasons for the belief that bias or prejudice exists.

A judge must recuse himself if a reasonable person would believe that he is unable to be

impartial. _Yagman v. Republic Ins._, 987 F.2d 622, 626 (9th Cir. 1993). A litigant cannot,

however, use the recusal process to remove a judge based on adverse rulings in the

pending case: the alleged bias must result from an extrajudicial source. *U.S. v. Studley*, 783

F.2d 934, 939 (9th Cir. 1986).

The exact nature of the alleged conflict is difficult to discern. In his complaint

plaintiff asserts that "the political branches of the State of Washington" sought "to align

the pecuniary interests of its judges with enforcing mortgages owned by purported

securities certificate holders . . . ." Dkt # 1-1 at ¶ 3.8. Given plaintiff's current argument, it

appears that he believes that the state employee and judicial retirement systems into which

the undersigned paid prior to his elevation to the federal bench have invested in mortgage-

backed securities, giving rise to a self-interested desire to protect that investment at the

expense of homeowner-borrowers. There is no evidence that the state employee and/or

judicial retirement systems at issue have invested in mortgage-backed securities, much less

ORDER AWARDING ATTORNEY'S FEES AND
REFERRING MATTER TO CHIEF JUDGE ESTUDILLO - 8

that they have invested in the specific mortgage security instrument or instruments that are backed by plaintiff's promissory notes. Thus, there is no reason to believe that the presiding judicial officer has "a financial interest in the subject matter in controversy or in a party to the proceeding." 28 U.S.C. § 455(b)(4). The undersigned is subjectively unaware of any such interest. Even if one were to assume that resolution of plaintiff's claims could in some way impact a security in which the undersigned's retirement accounts have invested, both the governing statutory scheme and the Judicial Code of Conduct state that owning shares of a mutual or common investment fund that holds securities does not constitute a financial interest in the security unless the judge participates in the management of the fund. 28 U.S.C. § 455(d)(4)(i); Canon 3C(1)(c)(i). Plaintiff does not contend that the undersigned manages any state retirement accounts.

Plaintiff has not provided any evidence of bias or prejudice and has not shown that the undersigned's impartiality could reasonably be questioned. The motion to recuse is therefore DENIED. Pursuant to Local Civil Rule 3(f), the Clerk of Court is directed to refer plaintiff's motion (Dkt. # 55) to Chief Judge David G. Estudillo for review.

For all of the foregoing reasons, defendants' motion for Rule 11 sanctions is GRANTED in part. Scott Stafne and the law firm of Stafne Trumbull LLC are jointly and severally liable for $15,355.00 in reasonable attorney's fees incurred in defending against

ORDER AWARDING ATTORNEY'S FEES AND
REFERRING MATTER TO CHIEF JUDGE ESTUDILLO - 9

the claims asserted and in filing the sanctions motion.[1] Payment shall be made to defendants' counsel within fourteen days of the date of this Order.

Dated this 8th day of November, 2023.

_MrS Lasnik_
Robert S. Lasnik
United States District Judge

---

[1] Hours related to the filing of an amended motion for summary judgment and the separate motion addressing the takings claim have been deleted from the fee computation.

ORDER AWARDING ATTORNEY'S FEES AND
REFERRING MATTER TO CHIEF JUDGE ESTUDILLO - 10